AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❑ Original ❑



CLERK'S OFFICE
A TRUE COPY
Apr 18, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Device A, currently located at 345 W. Saint Paul )<br>Avenue, Milwaukee, Wisconsin, more fully described in )<br>Attachment A ) | Case No. **25-M-375 (SCD)** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B

       **YOU ARE COMMANDED** to execute this warrant on or before       5-2-25       *(not to exceed 14 days)*
    ❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
                                                    *(United States Magistrate Judge)*

       ❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and time issued:      4-18-25. 11:00 am                    *Stephen C. Dries*
                                                    *Judge's signature*

City and state:   Milwaukee, Wisconsin                    Stephen C. Dries, U.S. Magistrate Judge
                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to Be Searched

The property to be searched is described as follows:

A black Apple iPhone smartphone with an Apple logo on the back, bearing serial number KR99YP71NY, hereinafter referred to as "**Device A**."

**Device A** is currently located at the USPIS Milwaukee office, located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin 53203.  This warrant authorizes the forensic examination of **Device A** for the purpose of identifying the electronically stored information described in Attachment B.

<u>**ATTACHMENT B**</u>

1.  All records on **Device A** described in Attachment A that relate to violations of 21 U.S.C. §§ 846, 843(b), and 841(a)(1) (i.e., the Subject Offenses), and involve Steven RAMOS-SERRA, including, but not limited to:

> a. any documents and communication related to the Subject Offenses;
>
> b. lists of contacts and related identifying information;
>
> c. any information related to criminal activity and co-conspirators (including names, addresses, phone numbers, or any other identifying information);
>
> d. any information recording schedule or travel;
>
> e. all bank records, checks, credit card bills, account information, and other financial records;
>
> f. Photographs and/or videos depicting evidence of the Subject Offenses;
>
> g. Any evidence related to either the ownership, purchase, or possession of items used in the Subject Offenses;
>
> h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.  Evidence of user attribution showing who used or owned the **Device A** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the USPIS may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*

Device A, currently located at 345 W. Saint Paul Avenue,
Milwaukee, Wisconsin, more fully described in
Attachment A

) 
) 
) 
) 
) 
) 

Case No. 25-M-375 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance; use of a communications facility to facilitate |
| 21 U.S.C. § 843(b) | the distribution of a controlled substance; and conspiracy to distribute a controlled |
| 21 U.S.C. § 846 | substance. |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Tyler Fink
Digitally signed by Tyler Fink
Date: 2025.04.17 13:52:52 -05'00'

*Applicant's signature*

Tyler Fink, USPIS Inspector

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 4-18-25 _____

Stephen C. Dries

*Judge's signature*

City and state: _____ Milwaukee, Wisconsin _____

Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Apr 18, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR SEARCH WARRANT**

I, Tyler Fink, being first duly sworn on oath, on information and belief state:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a full-time law enforcement officer since June 2014.

3.      The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, Section 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

4.      I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, prescription medications, and other matters related to the Postal Service. I have intercepted numerous parcels, which were found to contain narcotics, prescription medications, or proceeds of narcotics trafficking and other evidence of criminal activity.

5.      In June 2014, I completed the Peace Officer Standards and Training certification at the St. Louis County and Municipal Police Academy while employed as a City of Creve Coeur

1

Police Officer.  While working as a Police Officer, I received extensive training in narcotics investigations.  In 2017, I graduated from the United States Postal Inspection Service ("USPIS") Basic Inspector Training program.  I received advanced training by the USPIS in the investigation of controlled substances or proceeds/payments being transported through the United States.

6.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846 (possession with intent to distribute a controlled substance, unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance, and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug-trafficking investigations, including ones using wiretaps.  More specifically, my training and experience includes the following:

    a.  I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b.  I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

    c.  I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

2

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

i. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

j. I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business;

k. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

l. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

m. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses, or other locations over which they maintain dominion and control;

3

n. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

o. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

p. I know drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization; and

q. I know drug traffickers take (or cause to be taken) and maintain photographs of themselves, their associates, their property, and their drugs.

7. I have been the affiant on over 90 warrants in federal court. Based on my training, personal experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, prescription medications, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

8. I have participated in several narcotics and firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. On many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

4

9. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

10. This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon official records, witness statements, recorded statements, surveillance video, and public records, which I consider to be reliable as set forth herein.

11. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

12. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility [including the mails] to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) have been committed, are being committed, and/or will be committed by Steven RAMOS-SERRA ("RAMOS-SERRA") (DOB: XX/XX/1993).

13.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

14.     The property to be searched is described as follows:

A black Apple iPhone smartphone with an Apple logo on the back, bearing serial number KR99YP71NY, hereinafter referred to as "**Device A.**"

15.     **Device A** is currently located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin 53203.

16.     The applied-for warrant would authorize the forensic examination of the **Device A** for the purpose of identifying electronically stored data more particularly described in Attachment B.

### PROBABLE CAUSE

17.     In April 2024, case agents began investigating Lloyd RODRIGUEZ ("RODRIGUEZ") (DOB: XX/XX/1980) for receiving large amounts of cocaine in the Eastern District of Wisconsin.  Subsequent investigation found the cocaine shipments from Puerto Rico were being coordinated by RAMOS-SERRA.

*Historical parcels mailed from Puerto Rico to various Milwaukee addresses*

18.     On April 9, 2024, after a review of USPS records, I was made aware of the following suspicious USPS parcels:

a.  USPS Priority Mail parcel 9505510415074017215868 ("SUBJECT PARCEL 1").  SUBJECT PARCEL 1 was a USPS large flat rate parcel weighing

6

approximately 7 lbs. 8 oz. The shipping label for SUBJECT PARCEL 1 indicated it was from "Valeria Rivera Urb. Santamerica 15043 Calle Michigan Coto Laurel P.R. 00780". SUBJECT PARCEL 1 bore a handwritten label addressed to "Jonathan Rivera 2018A S. 12th. St. Unit (Back Door) Milwaukee, Wi 53204". SUBJECT PARCEL 1 was postmarked on January 17, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 1:35 p.m. The postage paid was $22.80. SUBJECT PARCEL 1 was delivered on January 22, 2024, at approximately 2:11 p.m.

b. USPS Priority Mail parcel 9505510415084051191240 ("SUBJECT PARCEL 2"). SUBJECT PARCEL 2 was a USPS large flat rate parcel weighing approximately 6 lbs. 2 oz. The shipping label for SUBJECT PARCEL 2 indicated it was from "Migdalia Rodriguez Urb. Santamerica 15043 Calle Michigan Coto Laurel P.R. 00780". SUBJECT PARCEL 2 bore a handwritten label addressed to "David Rodriguez 2018A S. 12th. St. (Lwr Unit) Back Door Milwaukee, WI 53204". SUBJECT PARCEL 2 was postmarked on February 20, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 4:09 p.m. The postage paid was $24.75. SUBJECT PARCEL 2 was delivered on February 22, 2024, at approximately 10:51 a.m.

c. USPS Priority Mail parcel 9505510415074099271424 ("SUBJECT PARCEL 3"). SUBJECT PARCEL 3 was a USPS large flat rate parcel weighing approximately 6 lbs. 3 oz. The shipping label for SUBJECT PARCEL 3 indicated it was from "Victoria Ocasio Urb. Santamerica 15043 Calle Michigan Coto Laurel PR 00780". SUBJECT PARCEL 3 bore a handwritten label

7

addressed to "Franco Rosario 2018 S 12th St (Back Door) Milwaukee, WI 53204". SUBJECT PARCEL 3 was postmarked on April 8, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 9:47 a.m. The postage paid was $24.75.

d. USPS Priority Mail parcel 9505510547324058365946 ("SUBJECT PARCEL 4"). SUBJECT PARCEL 4 was a USPS large flat rate parcel weighing approximately 6 lbs. 13 oz. The shipping label for SUBJECT PARCEL 4 indicated it was from "Migdalia Flores Ext. Santa teresita calle Santa Narcisa #3516 Ponce P.R. 00730". SUBJECT PARCEL 4 bore a handwritten label addressed to "Michael Flores 1111 South 38th Street Milwaukee Wi 53215 Milwaukee, WI 53204". SUBJECT PARCEL 4 was postmarked on February 27, 2024, in Mercedita, Puerto Rico 00715 at approximately 9:04 a.m. The postage paid was $24.75. SUBJECT PARCEL 4 was delivered on February 29, 2024, at approximately 11:32 a.m.

e. USPS Priority Mail parcel 9505512271904066063587 ("SUBJECT PARCEL 5"). SUBJECT PARCEL 5 was a USPS large flat rate parcel weighing approximately 5 lbs. 13 oz. The shipping label for SUBJECT PARCEL 5 indicated it was from "Migdalia Flores Ext. Santa Teresita Calle Santa Narcis #3516 Ponce PR 00730". SUBJECT PARCEL 5 bore a handwritten label addressed to "Franco Rosario 2009 S 14th St, Apt #D Milwaukee, WI 53204". SUBJECT PARCEL 5 was postmarked on March 6, 2024, in Ponce, Puerto Rico 00717 at approximately 5:07 p.m. The postage paid was $24.75.

8

SUBJECT PARCEL 5 was delivered on March 9, 2024, at approximately 2:21 p.m.

19.     I review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. I do this because I know, based on training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names, phone numbers, and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

20.     I know, based on my training and experience, Puerto Rico is a trans-shipment point for controlled substances. As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS and/or other means.

21.     The Consolidated Lead Evaluation and Reporting ("CLEAR") database is a public records product which is designed for law enforcement officers in locating subjects and witnesses, verifying identities of individuals, and gathering background information for use in investigations. A search of the CLEAR database revealed the recipient names shown on the shipping labels for each of the parcels mentioned above (SUBJECT PARCELs 1, 2, 3, 4, and 5) were fictitious. The same database could not verify the authenticity of the sender's name for each parcel.

22.     On April 11, 2024, case agents conducted surveillance on the delivery of SUBJECT PARCEL 3. At approximately 1:00 p.m., a USPS Letter Carrier began delivering mail to the 2000

9

block of S. 12th Street. At approximately 1:04 p.m., Drug Enforcement Administration Task Force Officer ("TFO") Robert Gregory observed a Hispanic male, later identified as Lloyd RODRIGUEZ, wearing a black hat, black sweatshirt, and black pants open the wood gate on the south side of 2018 S. 12th Street. The male walked through the gate to the front lawn and began looking up and down the street. After looking at the Letter Carrier down the street, RODRIGUEZ then walked back through the gate toward the rear of the residence. At approximately 1:05 p.m., I observed a silver 2001 Honda CRV, bearing Wisconsin license plate AFZ2109, with tinted windows moving from the rear parking slab of 2018 S. 12th Street to the alley. I observed RODRIGUEZ exit the vehicle and move out of view. Moments later, RODRIGUEZ got back in the driver's seat and drove the vehicle to park in front of 2007 S 12th Street. This location is approximately two houses north of 2018A S. 12th Street on the other side of the street. RODRIGUEZ did not get out of the vehicle while parked at this location. From his viewpoint, he would have been able to conduct countersurveillance to see the front of 2018 S. 12th Street and watch SUBJECT PARCEL 3 get delivered.

23.     At approximately 1:12 p.m., case agents observed the Letter Carrier take SUBJECT PARCEL 3 to the southside of 2018 S. 12th Street, open the wood gate on the southside of the residence, and move out of view with the parcel toward the rear of the residence. At this same time, USPS records showed the parcel was scanned as delivered. Case agents then observed the Letter Carrier emerge from the rear of the residence without the parcel. RODRIGUEZ did not emerge from his vehicle while the Letter Carrier delivered SUBJECT PARCEL 3.

24.     At approximately 1:13 p.m., the Honda CRV drove directly from S. 12th Street to the rear parking slab of 2018 S. 12th Street and out of view of case agents.

10

25.     From my training and experience, I believe RODRIGUEZ was conducting counter surveillance on the delivery of SUBJECT PARCEL 3.  Case agents are familiar with techniques members of drug trafficking organizations ("DTO") use to conduct counter surveillance.  Case agents have conducted surveillance on numerous USPS parcels being delivered and have observed this technique being used several times.  Members of DTOs do this in order to attempt to surveil any actions of possible law enforcement officers being in the area while receiving drug-laden USPS parcels.

26.     The Wisconsin Department of Transportation ("DOT") records indicated RODRIGUEZ's address on record was 2018A S. 12th Street.  Case agents were able to identify RODRIGUEZ after comparing his Wisconsin driver's license photograph to the Hispanic male observed exiting the residence and driving the CRV.  These same DOT records showed the CRV was registered to a Veronica Gonzalez at 750 S 22nd Street, Apartment 4, Milwaukee, Wisconsin 53204.

27.     I later conducted a review of Wisconsin probation and parole records.  These records indicated RODRIGUEZ is currently on probation for a felony receiving stolen property case and his primary address on file with probation and parole is listed as 2018A S. 12th Street.  Additionally, these same records indicated his wife's name as Veronica Gonzalez.  This is the same name listed as the registered owner of the Honda CRV driven by GONZALEZ.  The same probation and parole records showed RODRIGUEZ has a juvenile daughter with a listed address of 1111 S. 38th Street, Milwaukee, Wisconsin.  This is the same destination address for SUBJECT PARCEL 4.

28.     On May 13, 2024, I was made aware of USPS Priority Mail parcel 9505510415074127293381 ("SUBJECT PARCEL 7"). SUBJECT PARCEL 7 was a USPS large

11

flat rate parcel weighing approximately 5 lbs. 13 oz. The shipping label for SUBJECT PARCEL 7 indicated it was from "Victor Torres Ext. Santa Teresita Calle Santa Narcisa #3516 Ponce P.R 00730". SUBJECT PARCEL 7 bore a handwritten label addressed to "Daniel Santos 2018 S 12th St (Back Door) Milwaukee, WI 53204". SUBJECT PARCEL 7 was postmarked on May 6, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 3:49 p.m. The postage paid was $24.75. SUBJECT PARCEL 7 was delivered on May 9, 2024, at approximately 10:43 a.m.

29.     I conducted a search of the CLEAR database, which indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 7 was fictitious. The CLEAR database could not verify the authenticity of the sender's name for each parcel.

30.     On July 18, 2024, I was made aware of USPS Priority Mail parcel 9505510415074184328316 ("SUBJECT PARCEL 8"). SUBJECT PARCEL 8 was a USPS large flat rate parcel weighing approximately 5 lbs. 13 oz. The shipping label for SUBJECT PARCEL 8 indicated it was from "Natalia Rivera Urb. Santamerica 15043 Calle Michigan Coto Laurel PR. 00780". SUBJECT PARCEL 8 bore a handwritten label addressed to "Angel Rivera 2018A S 12th St Lwr Unit (Back Door) Milwaukee, WI 53204". SUBJECT PARCEL 8 was postmarked on July 2, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 12:37 p.m. The postage paid was $24.75. SUBJECT PARCEL 8 was delivered on July 5, 2024, at approximately 1:33 p.m.

31.     I conducted a search of the CLEAR database which indicated the sender and recipient names shown on the shipping label for SUBJECT PARCEL 8 were fictitious.

32.     On August 5, 2024, I was made aware of USPS Priority Mail parcel 9505512717874216962780 ("SUBJECT PARCEL 9"). SUBJECT PARCEL 9 was a USPS large flat rate parcel weighing approximately 6 lbs. 1 oz. The shipping label for SUBJECT PARCEL 9 indicated it was from "Pedro Gonzales Ext. Santa Teresita Calle Santa Narcisa #3516 Ponce PR

12

00730". SUBJECT PARCEL 9 bore a handwritten label addressed to "Daniel Santos 2018A S. 12th. St. Lwr Unit (Back Door) Milwaukee, Wi 53204". SUBJECT PARCEL 9 was postmarked on August 3, 2024, in Ponce, Puerto Rico 00717 at approximately 2:02 p.m. The postage paid was $24.75.

33.    I conducted a search of the CLEAR database which indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 9 was fictitious. The CLEAR database could not verify the authenticity of the sender's name for each parcel.

34.    On August 8, 2024, case agents conducted surveillance on the delivery of SUBJECT PARCEL 9. At approximately 12:40 p.m., I again observed the silver 2001 Honda CRV, bearing Wisconsin license plate AFZ2109, park on S. 12th Street facing southbound just south of W. Rogers Street. The vehicle appeared to be positioned to be able to view the delivery of SUBJECT PARCEL 9 and again conduct countersurveillance. At approximately this same time, the USPS Letter Carrier parked on W. Rogers Street just east of S. 12th Street. The Letter Carrier began delivering mail and take SUBJECT PARCEL 9 to the southside of 2018 S. 12th Street, open the wood gate on the southside of the residence, and move to the rear of the residence. While looking down the gangway, case agents observed the carrier on the southside of the residence near the southside door under the awning. At approximately 1:27 p.m., USPS records showed the parcel was scanned as delivered. Case agents then observed the Letter Carrier emerge from the residence without the parcel. At approximately 1:28 p.m., the CRV moved from its parked location to the alley and parked directly behind 2018A S 12th Street. Case agents then observed RODRIGUEZ open the driver's door of the CRV, get out of the vehicle, and walk toward 2018A S 12th Street. Case agents then observed RODRIGUEZ in the area of the southside door and was then no longer seen. Case agents suspect RODRIGUEZ used the door in the gangway to enter the residence.

13

35.    A review of Post Office surveillance video from the postmark location of SUBJECT PARCEL 9 showed the parcel was shipped by an older Hispanic male who was later identified as Orlando SERRA-BARBOSA ("SERRA-BARBOSA") as detailed below.

36.    A review of the USPS business records indicated the following additional USPS parcels were linked to SUBJECT PARCEL 9:

    a.    USPS Priority Mail parcel 9505510622034158682200 ("SUBJECT PARCEL 10"). SUBJECT PARCEL 10 was a USPS large flat rate parcel weighing approximately 6 lbs. 5 oz.  The shipping label for SUBJECT PARCEL 10 indicated it was from "Victor Torres Ext. Santa Teresita calle Santa Narcisa #3516 Ponce P.R 00730".  SUBJECT PARCEL 10 bore a handwritten label addressed to "Orlando Fuentes 1111 South 38th Street Milwaukee, WI 53215". SUBJECT PARCEL 10 was postmarked on June 6, 2024, in Ponce, Puerto Rico 00730 at approximately 3:30 p.m.  The postage paid was $24.75.  SUBJECT PARCEL 10 was delivered on June 10, 2024, at approximately 12:39 p.m.

    b.    USPS Priority Mail parcel 9505511440524150050800 ("SUBJECT PARCEL 11"). SUBJECT PARCEL 11 was a USPS medium flat rate parcel weighing approximately 4 lbs. 5 oz.  The shipping label for SUBJECT PARCEL 11 indicated it was from "David Rivera 1111 S. 38th Street Milwaukee, WI 53215".  SUBJECT PARCEL 11 bore a handwritten label addressed to "Luis Serra Barbosa HC 06 Box 2258 Ponce, PR 00731".  SUBJECT PARCEL 11 was postmarked on May 29, 2024, in Milwaukee, WI 53207 at approximately 1:51 p.m.  The postage paid was $18.40.  SUBJECT PARCEL 11 was delivered on June 3, 2024, at approximately 12:32 p.m.

14

c.  USPS Priority Mail parcel 9505511440524205071200 ("SUBJECT PARCEL 12"). SUBJECT PARCEL 12 was a USPS medium flat rate parcel weighing approximately 4 lbs. 13 oz.  The shipping label for SUBJECT PARCEL 12 indicated it was from "David Barbosa 1111 S. 38th St. Milwaukee, WI 53215". SUBJECT PARCEL 12 bore a handwritten label addressed to "Luis Serra Barbosa HC 06 Box 2258 Ponce, PR 00731".  SUBJECT PARCEL 12 was postmarked on July 23, 2024, in Milwaukee, WI 53207 at approximately 3:04 p.m.  The postage paid was $18.40.  SUBJECT PARCEL 12 was delivered on July 29, 2024, at approximately 1:37 p.m.

37.     For SUBJECT PARCEL 10, I conducted a search of the CLEAR database which indicated no one named "Orlando Fuentes" resided at the recipient's address.  The CLEAR database could not verify the authenticity of the sender's name.

38.     For SUBJECT PARCEL 11, I conducted a search of the CLEAR database which indicated no one named "David Rivera" resided at the sender's address.  The CLEAR database showed a Luis Serra-Barbosa currently, or has, utilized the recipient's address.

39.     For SUBJECT PARCEL 12, I conducted a search of the CLEAR database which indicated no one named "David Barbosa" resided at the sender's address.  The CLEAR database showed a Luis Serra-Barbosa currently, or has, utilized the recipient's address.

40.     On August 8, 2024, I traveled to the Bay View Post Office, which is the postmark location for SUBJECT PARCEL 12, to review the surveillance video.  The video showed RODRIGUEZ enter the Post Office by himself and ship SUBJECT PARCEL 12.  I was able to identify RODRIGUEZ when comparing the video to his Wisconsin driver's license photograph and after seeing him in person on multiple occasions.

15

41.     On September 10, 2024, I was made aware of USPS Priority Mail parcel 9505510415074253376316 ("SUBJECT PARCEL 13"). SUBJECT PARCEL 13 was a USPS large flat rate parcel weighing approximately 6 lbs. 5 oz.  The shipping label for SUBJECT PARCEL 13 indicated it was from "Patricia Rosario Urb. Santa America 15043 Calle Michigan Coto Laurel 00780".  SUBJECT PARCEL 13 bore a handwritten label addressed to "Franco Rosario 2018A S. 12th St. Lowr Unit (Back Door) Milwaukee, Wisconsin 53204".  SUBJECT PARCEL 13 was postmarked on September 9, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 3:15 p.m.  The postage paid was $24.75.

42.     I conducted a search of the CLEAR database which indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 13 was fictitious.  The CLEAR database could not verify the authenticity of the sender's name.

43.     On October 9, 2024, I was made aware of USPS Priority Mail parcel 9505510415074282393933 ("SUBJECT PARCEL 14"). SUBJECT PARCEL 14 was a USPS large flat rate parcel weighing approximately 6 lbs. 12 oz.  The shipping label for SUBJECT PARCEL 14 indicated it was from "Victoria Ocasio Ext. Santa Teresita Calle Santa Narcisa # 3516 Ponce P.R 00730".  SUBJECT PARCEL 14 bore a handwritten label addressed to "Franco Rosario 2018A S 12th St. Lowr Unit (Back Door) Milwaukee, Wisconsin 53204".  SUBJECT PARCEL 14 was postmarked on October 8, 2024, in Coto Laurel, Puerto Rico 00780 at approximately 1:26 p.m.  The postage paid was $26.00.

44.     I conducted a search of the CLEAR database which indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 14 was fictitious.  The CLEAR could not verify the authenticity of the sender's name.

16

45.     On October 10, 2024, case agents conducted surveillance on the delivery of SUBJECT PARCEL 14.  At approximately 12:13 p.m., I observed the silver 2001 Honda CRV, bearing Wisconsin license plate AFZ2109, drive up and down S. 12th Street slowly.  The CRV then parked on S. 12th Street facing southbound just south of W. Rogers Street.  From my training and experience, the way the vehicle was driven and parked appeared to be conducive to the driver conducting counter surveillance.   The vehicle appeared to be positioned to be able to view the delivery of SUBJECT PARCEL 14.  At approximately 12:45 p.m., I observed RODRIGUEZ open the driver's door of the CRV and look north up the street.  It should be noted, the Letter Carrier was delivering mail north of RODRIGUEZ's location at this time.  It appeared RODRIGUEZ was attempting to see where the Letter Carrier was on his route.   At approximately 12:46 p.m., RODRIGUEZ exited the CRV and walked towards the side door of 2018A S 12th Street and out of view of case agents.  At approximately 12:49 p.m., RODRIGUEZ emerged from the area of the residence and sat back into the driver's seat of the CRV.  At approximately 1:09 p.m., the Letter Carrier arrived at 2018A S. 12th Street, walked towards the side door and out of view of case agents.  The Letter Carrier delivered SUBJECT PARCEL 14 and left the area.  As soon as the Letter Carrier left, RODRIGUEZ drove away eastbound on W. Rogers Street.  Approximately two minutes later, I  drove by the front of the residence and SUBJECT PARCEL 14 was not observed.  When checking the rear alley of the residence, RODRIGUEZ's vehicle was parked in the alley directly behind 2018A S. 12th Street.

46.     A review of the USPS business records indicated the following additional USPS parcel was linked to SUBJECT PARCEL 14:  USPS Priority Mail parcel 9505511440534274123359 ("SUBJECT PARCEL 15"). SUBJECT PARCEL 15 was a USPS medium flat rate parcel weighing approximately 4 lbs. 13 oz.  The shipping label for SUBJECT

17

PARCEL 15 indicated it was from "David Ortiz 1111 S. 38th St. Milwaukee, WI 53215". SUBJECT PARCEL 15 bore a handwritten label addressed to "Alexis Rodriguez HC 06 Box 4784 Coto Laurel PR 00780". SUBJECT PARCEL 15 was postmarked on September 30, 2024, in Milwaukee, Wisconsin 53207 at approximately 2:41 p.m. The postage paid was $18.40. SUBJECT PARCEL 15 was delivered on October 4, 2024 at approximately 1:16 p.m.

47. I conducted a search of the CLEAR database which indicated the sender's name shown on the shipping label for SUBJECT PARCEL 15 was fictitious. The same database indicated multiple people with the last name RODRIGUEZ have utilized HC 6 Box 4784, but none of them had the first name of Alexis.

48. On October 11, 2024, I traveled to the Bay View Post Office, which is the postmark location for SUBJECT PARCEL 15, to review the surveillance video. The video showed RODRIGUEZ enter the Post Office by himself and ship SUBJECT PARCEL 15.

49. On October 9, 2024, I was made aware of USPS Priority Mail parcel 9505515217034303299403 ("SUBJECT PARCEL 16"). SUBJECT PARCEL 16 was a USPS medium flat rate parcel weighing approximately 4 lbs. 11 oz. The shipping label for SUBJECT PARCEL 16 indicated it was from "David Ortiz 1111 S. 38th St. Milwaukee, WI 53215". SUBJECT PARCEL 16 bore a handwritten label addressed to "Alexis Rodriguez HC 06 Box 4784 Coto Laurel PR 00780". SUBJECT PARCEL 16 was postmarked on October 29, 2024, in Milwaukee, Wisconsin 53204 at approximately 2:43 p.m. The postage paid was $19.30. SUBJECT PARCEL 16 was delivered on November 2, 2024 at approximately 11:58 a.m.

50. I conducted a search of the CLEAR database which indicated the sender's name shown on the shipping label for SUBJECT PARCEL 16 was fictitious. The CLEAR database

18

indicated multiple people with the last name RODRIGUEZ have utilized HC 6 Box 4784, but none of them had the first name of Alexis.

51.     On November 1, 2024, I traveled to the Harbor Post Office, which is the postmark location for SUBJECT PARCEL 16, to review the surveillance video.  The video showed RODRIGUEZ enter the Post Office by himself and ship SUBJECT PARCEL 16.

52.     A review of the Milwaukee Couty Circuit Court system showed a paternity court case, number 2013PA002846PJ, where RODRIGUEZ was the alleged father and the alleged mother had an address on file as 1111 S. 38th Street, Milwaukee, Wisconsin 53215.  The address of the mother is the same recipient's address for SUBJECT PARCEL 4 and SUBJECT PARCEL 9.  It is also the sender's address used by RODRIGUEZ on SUBJECT PARCEL 12, 15, and 16 to ship suspected drug proceeds.  From my experience, drug traffickers will sometimes have drug laden parcels shipped to an address associated with the mother of their children in order to deter law enforcement from investigating their own residence.

53.     From my training and experience, I am aware drug traffickers will send money associated with the sale of narcotics back to their supplier through the USPS mail system.  These proceeds are generally in large amounts of cash and are often thousands of dollars.  Case agents believe SUBJECT PARCEL 12, 15, and 16 were parcels containing drug proceeds intended to be delivered to RODRIGUEZ's drug source of supply.

54.     A review of the USPS business records indicated the following additional USPS parcel was linked to SUBJECT PARCEL 16:  USPS Priority Mail parcel 9505510622034302728648 ("SUBJECT PARCEL 17"). SUBJECT PARCEL 17 was a USPS large flat rate parcel weighing approximately 6 lbs. 4 oz.  The shipping label for SUBJECT PARCEL 17 indicated it was from "Emanuel Rivera Ext. Santa Teresita Calle. Santa Narcisa

19

#3516 Ponce P.R 00730". SUBJECT PARCEL 17 bore a handwritten label addressed to "Luis Rivera Santiago 2705 W Courtland Ave. Apt. #4 Milwaukee WI 53209". SUBJECT PARCEL 17 was postmarked on October 28, 2024, in Ponce, Puerto Rico 00730 at approximately 3:02 p.m. The postage paid was $26.00.

55.     I conducted a search of the CLEAR database which indicated the recipient's name shown on the shipping label for SUBJECT PARCEL 17 was fictitious. The CLEAR could not verify the authenticity of the sender's name.

56.     On November 1, 2024, at approximately 12:15 p.m., I began conducting surveillance on the delivery of SUBJECT PARCEL 17. Upon arrival to the area of 2705 W Courtland Avenue, I observed RODRIGUEZ's silver 2001 Honda CRV bearing Wisconsin license plate AFZ2109 parked on the northside of W. Courtland Avenue directly in front of the delivery address. I could tell the vehicle was occupied due to the brake lights occasionally coming on. At approximately 12:52 p.m., the USPS Letter Carrier scanned the parcel as delivered. At approximately 1:05 p.m., I observed the USPS delivery vehicle leave the area. At approximately 1:12 p.m., I observed a heavy-set unknown Hispanic male come from the northside area of 2705 W Courtland Avenue and walk across W. Courtland Avenue. The male was carrying a USPS large flat rate parcel, which appeared similar in size and markings to SUBJECT PARCEL 17. The driver's door of the CRV opened from the inside and I identified RODRIGUEZ when he partially leaned out of the CRV to greet the unknown male. The unknown male then handed the parcel to RODRIGUEZ, who took possession of the parcel and closed the door. At approximately 1:13 p.m., RODRIGUEZ drove away in the CRV with the parcel.

57.     A review of Post Office surveillance video from the postmark location of SUBJECT PARCEL 17 showed the parcel was shipped by an Hispanic male who was later

20

identified as Steven RAMOS-SERRA ("RAMOS-SERRA"). See below for how RAMOS-SERRA was identified.

<u>*USPS Parcel Seized Containing Approximately One Kilogram of Cocaine*</u>

58. On November 6, 2024, I was made aware of USPS Priority Mail parcel 9505510547324310505172 ("SUBJECT PARCEL 18"). SUBJECT PARCEL 18 is approximately a 12.25" x 12" x 6" USPS parcel weighing approximately 6 lbs. 6 oz. The shipping label for SUBJECT PARCEL 18 indicated it is from "Victor Torres HC 06 Box 2258 Ponce PR 00731". SUBJECT PARCEL 18 bore a handwritten label addressed to "Franco Rosario 2018A S 12th St. Lowr Unit, (Back Door) Milwaukee Wisconsin 53204". SUBJECT PARCEL 18 was postmarked on November 5, 2024, in Mercedita, Puerto Rico 00715 at approximately 1:36 p.m. The postage paid was $26.00.

59. I conducted a search of the CLEAR database, which indicated both the recipient and sender names shown on the shipping label for SUBJECT PARCEL 18 were fictitious.

60. A review of Post Office surveillance video from the postmark location of SUBJECT PARCEL 18 showed RAMOS-SERRA drove SERRA-BARBOSA to the Post Office. SERRA-BARBOSA shipped SUBJECT PARCEL 18.

61. On November 7, 2024, I located SUBJECT PARCEL 18 at the West Milwaukee Post Office, located at 4300 W. Lincoln Avenue, Milwaukee, Wisconsin 53219, and detained the parcel for further investigation.

62. On November 7, 2024, I applied for and received a federal search warrant for SUBJECT PARCEL 18. The search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 18, case agents found the parcel contained approximately 990 grams of

suspected cocaine.  Case agents field tested a sample of the suspected cocaine, which field tested positive for the presence of cocaine.

*Search of 2018A S 12th Street and post-Miranda interview of Lloyd RODRIGUEZ*

63.    On November 7, 2024, I applied for and received a search warrant for 2018A S. 12th Street, Lower Unit, Milwaukee, Wisconsin.  The search warrant was issued by Honorable Barry Phillips, Judicial Court Commissioner of the Judicial District of Wisconsin.

64.    On November 7, 2024, at about 10:44 a.m., an undercover Postal Inspector delivered the "sham" SUBJECT PARCEL 18 to 2018A S. 12th Street, Milwaukee, Wisconsin.  At about 10:45 a.m., RODRIGUEZ emerged from the residence, retrieved the "sham" SUBJECT PARCEL 18, and returned inside the residence with the parcel.  At about 10:47 a.m., law enforcement officers executed the state warrant at the residence.  Upon entering the residence, the officers located RODRIGUEZ alone.  On the kitchen table, officers located a black Apple iPhone smartphone with an Apple logo on the back, in a clear and tan case ("Device B"), and directly next to Device B was a black Apple iPhone smartphone with an Apple logo on the back in a black case ("Device C"). In a kitchen cabinet, there was a vacuum sealer with additional vacuum sealer plastic bags. In the master bedroom on top of a dresser, in the same vicinity as RODRIGUEZ's driver's license, there was a digital gram scale and approximately 1 gram of suspected cocaine, which later field tested positive for the presence of cocaine.  In the closet of the master bedroom there was a money counter.  In the back corner of a utility room, officers located the "sham" SUBJECT PARCEL 18 placed in the corner of the room, which was approximately a few feet away from a tan Springfield Armory semi-automatic 9mm pistol with a magazine loaded with 15 unfired cartridges.  Directly next to the pistol was a black drum style magazine loaded with 22 unfired 9mm cartridges.  In the detached garage, a digital gram scale was located in a tool chest.

22

65.     In a post-*Miranda* interview, RODRIGUEZ said that he lives at 2018A S. 12th Street.  In reference to SUBJECT PARCEL 18, RODRIGUEZ stated he was expecting the parcel to contain cocaine.  At first, he said he was expecting a kilogram, but later changed his answer and said he did not know how much cocaine there was going to be.

*Lloyd RODRIGUEZ Cell Phone Downloads*

66.     On November 13, 2024, I applied for a search warrant for both Device B and Device C.  On November 14, 2024, I received the search warrant.  The search warrant was issued by U.S. Magistrate Judge Stephen Dries in the Eastern District of Wisconsin.  On November 25, 2024, the download process was completed, and a review of the Devices was initiated.

67.     In both Devices B and Device C, case agents observed multiple phone contacts, chat conversations, and images of "Steven Deniro."  The images of "Steven Deniro" in the phones appeared to be the same subject seen in Post Office surveillance video for SUBJECT PARCEL 17 and SUBJECT PARCEL 18.  Case agents also located Facebook account "Steven De Niro (ليستر)" (https://www.facebook.com/stevenDN) and Instagram account "stev_deniro" (https://www.instagram.com/stev_deniro/).  Both of these social media accounts provided images of the same subject in RODRIGUEZ's phones and of the subject in the Post Office surveillance video for SUBJECT PARCELs 17 and 18.  As detailed below, I also located the name "Steven Ramos Serra" in the phone download.  When comparing the Puerto Rico driver's license photograph to the images in the phone download and the surveillance video, case agents identified "Steven Deniro" as Steven RAMOS-SERRA ("RAMOS-SERRA").

68.     On Device C, chat conversation number 861 was between RAMOS-SERRA and RODRIGUEZ.  The conversation was through RODRIGUEZ's WhatsApp.  RAMOS-SERRA was using phone number 939-305-3753 ("Target Cell Phone").  On May 29, 2024, RAMOS-SERRA

23

sent RODRIGUEZ a photograph of a piece of mail addressed to "ORLANDO SERRA BARBOSA HC 06 BOX 2258 PONCE, PR 00731." This address was the destination address for SUBJECT PARCEL 11 and SUBJECT PARCEL 12. Both of these parcels were suspected to have contained drug proceeds. It was also the sender's address for SUBJECT PARCEL 18, which was found to contain approximately one kilogram of suspected cocaine. On the same day, RAMOS-SERRA sent RODRIGUEZ the address, USPS records showed SUBJECT PARCEL 11 was shipped from Milwaukee to HC 06 Box 2258 Ponce, PR 00731. Again, on May 29, 2024, RODRIGUEZ sent a photograph of a USPS cardboard box with the sender shown as "David Rivera 1111 S. 38th Street, Milwaukee, WI 53215" and addressed to "Luis Serra Barbosa HC 06 Box 2258 Ponce, PR 00731." In the background of the photograph was a red and black flannel cloth, a black table, and red and black rug. This is the same table runner, table and rug seen by case agents in RODRIGUEZ's kitchen when the search warrant was executed on his residence. RODRIGUEZ then sent a picture of a USPS receipt showing tracking number 9505511440524150050800. On June 4, 2024, RODRIGUEZ sent a photograph of a piece of mail addressed to "1111 SOUTH 38TH STREET MILWAUKEE WI 53215." Two days later on June 6, 2024, RAMOS-SERRA sent a photograph of a USPS receipt showing SUBJECT PARCEL 10 was shipped from Ponce, Puerto Rico to this Milwaukee address. On June 23, 2024, RAMOS-SERRA sent a photograph of a piece of mail addressed to "URB SANTA AMERICA 15042 CALLE MICHIGAN COTO LAUREL PR 00780-2067". On June 24, 2024, RODRIGUEZ sent a photograph of a USPS carboard box with the sender shown as "Pedro Gonzalez 2009 S. 14th St. Apt #D Milwaukee, WI 53204" and addressed to "Nicolas Colon Urb. Santa America 15042 Calle Michigan Coto Laurel, PR 00780-2067." In the background of the photograph was a red and black flannel cloth, and red and black rug, and white and black checkered flooring. This is the same table runner, rug, and flooring seen by case

24

agents in RODRIGUEZ's kitchen when the search warrant was executed on his residence. Later on June 24, 2024, RODRIGUEZ sent a photograph of a USPS receipt showing Priority Mail parcel 9505511440534176071215 was shipped from Milwaukee to Coto Laurel, Puerto Rico. On July 1, 2024, RODRIGUEZ sent RAMOS-SERRA a photograph showing his address and RODRIGUEZ provided the intended fictious recipient name as "Angel Rivera." One day later on July 2, 2024, SUBJECT PARCEL 8 was shipped from Coto Laurel, Puerto Rico to RORIGUEZ's residence and addressed to "Angel Rivera." RAMOS-SERRA also sent a photograph of the USPS receipt for shipping SUBJECT PARCEL 8. On July 23, 2024, RAMOS-SERRA sent RODRIGUEZ the same photograph of the piece of mail showing HC 6 Box 2258 Ponce, PR 00731 and RAMOS-SERRA provided the fictious recipient's name of "Luis Serra Barbosa." On this same day, RODRIGUEZ sent RAMOS-SERRA photographs of SUBJECT PARCEL 12 and the receipt showing it was shipped. On July 30, 2024, RAMOS-SERRA sent a picture of SUBJECT PARCEL 12 after it was delivered. The photograph depicted SUBJECT PARCEL 12 open and there was a large sum of U.S. currency sitting next to the opened parcel along with what appeared to be plastic wrap, carbon paper, and vacuum sealed bags. RODRIGUEZ and RAMOS-SERRA continued to follow similar patterns providing each other with addresses for packages, fictious recipients names, and pictures of USPS receipts for SUBJECT PARCEL 9, 13, 14, and 18, which was found to contain approximately a kilogram of suspected cocaine. On September 10, 2024, RODRIGUEZ sent a photograph of a money order receipt, tracking number 714970006, to RAMOS-SERRA. On September 16, 2024, RODRIGUEZ provided RAMOS-SERRA with the address of 2705 W. Courtland Avenue, Apt. #4, Milwaukee, WI 53209. Two suspicious parcels, one of which was SUBJECT PARCEL 17, were delivered to this address from Puerto Rico after the date RODRIGUEZ provided it to RAMOS-SERRA.

25

69.     Case agents know drug traffickers who utilize the USPS to traffic drugs and drug proceeds frequently provide each other with names, addresses, and receipts showing USPS tracking numbers.  DTO members do this to confirm the correct destination address for parcels containing large amounts of drugs to ensure they are being shipped to the correct address since drug traffickers frequently use multiple addresses to receive drug laden packages.  They also provide each other with tracking numbers so both the sender and intended recipient can track the parcels through the mail stream.

70.     An image was saved to both Device B and Device C showing "STEVEN RAMOS SERRA, 15 CALLE CALIFORNIA, PONCE, PR 00730-3552."  This was typewritten on a piece of paper.  This name was used to search the Puerto Rico driver's license database for images.  The database showed an image of RAMOS-SERRA which was used to identify him in the post office surveillance video, both social media accounts, and the images in RODRIGUEZ's cell phone.

*Subpoena of Steven RAMOS-SERRA's Phone Number*

71.     In February 2025, case agents issued a subpoena, served on Claro (Puerto Rico Telephone Company), for telephone number 939-305-3753 ("Target Cell Phone"), as that number was in communication with RODRIGUEZ.  The subscriber information for the telephone number listed to Lourdes Ramos with a billing address of 15 Calle California, Ponce, Puerto Rico 00730.  This is the same address saved on a photograph in RODRIGUEZ's phone and the same address listed on RAMOS-SERRA's Puerto Rico driver's license. Toll analysis of 939-305-3753 ("Target Cell Phone") showed the top caller was 787-368-5405.  This phone number was saved in RAMOS-SERRA's iCloud account as "Steph," who is believed to be Stepanie COLON-ROLON.  From the pictures saved in RAMOS-SERRA's iCloud account, he appears to be in a close relationship with COLON-ROLON.

26

72.     A review of the data extractions for Devices B and C also revealed multiple communications between RODRIGUEZ and an individual identified in his contact lists as "Steven De Niro." "Steven De Niro's" number was 939-305-3753. On December 6, 2024, case agents applied for and received a search warrant for the Apple Inc. account associated with phone number 939-305-3753 ("Target Cell Phone"). The search warrant was issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin.

73.     A review of the iCloud account showed the young Hispanic male involved with shipping SUBJECT PARCELS 17 and 18 was in numerous "selfie" images recovered from the account. A recovered image of a vehicle insurance form completed by "Steven Ramos Serra" on February 28, 2024 indicated his address was "Calle California 15, Ponce, 00730," and that his telephone number was 939-305-3753 ("Target Cell Phone"). The person depicted in the Puerto Rico driver's license photograph for "Steven Ramos Serra" appears to be the same person in the "selfie" images recovered from the iCloud account for 939-305-3753 ("Target Cell Phone"), and in the surveillance footage of the young Hispanic male involved with shipping PARCELS 17 and 18. The Puerto Rico driver's license record also indicates that Calle California 15, Ponce, Puerto Rico 00730 is the residential address for "Steven Ramos Serra." Based on these facts, Steven RAMOS-SERRA is the likely user of the cellphone assigned number 939-305-3753 ("Target Cell Phone") and its associated iCloud account. The email account affiliated with RAMOS-SERRA's iCloud account was steven.deniro@icloud.com. Images recovered from the iCloud account revealed that "Steven De Niro" was RAMOS-SERRA's moniker.

74.     There were multiple images from the iCloud account of suspected cocaine in small and large distribution quantities.  One picture showed what appeared to be a vacuum sealed bag containing a kilogram of cocaine.

75.     RAMOS-SERRA had multiple photographs in the iCloud account of himself with another female.  The female appeared to be the same female shown in various Puerto Rico Post Office surveillance videos shipping U.S. Postal Service ("USPS") Priority Mail parcels SUBJECT PARCEL 8, SUBJECT PARCEL 13, and SUBJECT PARCEL 14.  There was also a photograph of an identification card showing a picture of this same female with the name Stephanie COLON-ROLON ("COLON-ROLON").  When comparing these images to the Post Office surveillance video and her Puerto Rico driver's license photograph, case agents identified COLON-ROLON as the female who shipped SUBJECT PARCEL 8, SUBJECT PARCEL 13, and SUBJECT PARCEL 14.

76.     The account contained several images of USPS packages and receipts which included images of USPS Priority Mail parcels SUBJECT PARCEL 1, SUBJECT PARCEL 2, SUBJECT PARCEL 3, SUBJECT PARCEL 4, SUBJECT PARCEL 5, and SUBJECT PARCEL 7.  There were additional images of First-Class mail addressed COLON-ROLON at Urb. Santa America, 15045 Calle Michigan, Coto Laurel, Puerto Rico 00780 and to Orlando SERRA-BARBOSA ("SERRA-BARBOSA") at HC 6 Box 2258, Ponce, Puerto Rico 00731.

77.     RAMOS-SERRA was depicted in multiple photographs with SERRA-BARBOSA, who was previously identified as the person on Post Office surveillance video shipping USPS Priority Mail parcels SUBJECT PARCEL 9 and SUBJECT PARCEL 18.

28

*Arrest of RAMOS-SERRA*

78.     On April 15, 2025, RAMOS-SERRA was arrested in the District of Puerto Rico based on an indictment returned against him in the Eastern District of Wisconsin on March 4, 2025 (case no. 25-CR-41-LA).  Incident to RAMOS-SERRA's arrest, officers determined he was in possession of a black Apple iPhone smartphone with an Apple logo on the back and bearing serial number KR99YP71NY ("**Device A**").  In a post-*Miranda* interview, RAMOS-SERRA admitted to using the U.S. Mail to send, or occasionally have others send on his behalf, parcels containing cocaine.  RAMOS-SERRA admitted to knowing that these parcels contained cocaine, and that he was responsible for mailing approximately 6 kilograms of cocaine.

79.     Case agents are aware, based on their training and experience, of numerous sophisticated techniques used by drug traffickers in furtherance of their drug trafficking activities. In this investigation, RAMOS-SERRA utilized several of these techniques including the use of shipping USPS parcels to multiple different addresses, shipping cocaine laden parcels addressed to a fictitious person, the suspected use of nominee names on cellular phone accounts to avoid law enforcement identification of the user of the devices, and the use of the USPS to transport narcotics. Therefore, case agents believes that RAMOS-SERRA is a sophisticated drug trafficker who participated in the shipment of several USPS parcels from Puerto Rico to Wisconsin, which contained distribution quantities of cocaine destined for drug traffickers in the Eastern District of Wisconsin.

*CONCLUSION*

80.     Case agents believe RAMOS-SERRA used his cell phone to facilitate drug trafficking and evidence of drug trafficking may likely be stored and recorded on **Device A**.

29

81.     From the previously mentioned Apple account search warrant on RAMOS-SERRA's iCloud, he is known to historically store data related to his cocaine distribution network, shipping methods, photographs, and communications within his Apple account.  When RAMOS-SERRA was arrested, he was found to be in possession of one Apple iPhone (i.e., "**Device A**"), which likely maintains access to an Apple account.

82.     Through my training, experience, and discussions with other experienced law enforcement officers, I am familiar with the ways in which drug traffickers and money launderers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

83.     Based upon my training and experience, I know that individuals involved in drug trafficking and money laundering frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances and money laundering.  I have also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

84.     Based on my training and experience, I am aware individuals involved in trafficking controlled substances and money laundering often possess a cellular device to compartmentalize their illegal activity and to avoid law enforcement detection.

85.     Based upon my training and experience, I believe it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds

30

of drug trafficking.  Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

86.     Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances and money laundering; (2) Steven RAMOS-SERRA was arrested in connection to multiple USPS parcels containing kilogram quantities of suspected cocaine; and (3) one cellular phone was recovered from RAMOS-SERRA's person, there is probable cause to believe that a search of the information contained within the above described **Device A** will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances.

87.     **Device A** was seized by the USPIS during the arrest of Steven RAMOS-SERRA on April 15, 2025.

88.     **Device A** is currently in storage at the USPIS Milwaukee office, located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin.  In my training and experience, I know that **Device A** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when **Device A** first came into the possession of USPIS.

89.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Device A** described in Attachment A to seek the items described in Attachment B.

## TECHNICAL TERMS

90.     Based on my training and experience, I use the following technical terms to convey the following meanings:

31

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to

32

another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be

33

assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

91.     Based on my training, experience, and research, I know that **Device A** has the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

92.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

93.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Device A** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Device A** because:

34

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

94. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Device A** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **Device A** to human inspection in order to determine whether it is evidence described by the warrant.

95. *Manner of execution.* Because this warrant seeks only permission to examine the device once in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>ATTACHMENT A</u>

### Property to Be Searched

The property to be searched is described as follows:

A black Apple iPhone smartphone with an Apple logo on the back, bearing serial number KR99YP71NY, hereinafter referred to as "**Device A**."

**Device A** is currently located at the USPIS Milwaukee office, located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin 53203. This warrant authorizes the forensic examination of **Device A** for the purpose of identifying the electronically stored information described in Attachment B.

<u>**ATTACHMENT B**</u>

1.      All records on **Device A** described in Attachment A that relate to violations of 21

U.S.C. §§ 846, 843(b), and 841(a)(1) (i.e., the Subject Offenses), and involve Steven RAMOS-

SERRA, including, but not limited to:

    a.  any documents and communication related to the Subject Offenses;

    b.  lists of contacts and related identifying information;

    c.  any information related to criminal activity and co-conspirators (including names,
        addresses, phone numbers, or any other identifying information);

    d.  any information recording schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial
        records;

    f.  Photographs and/or videos depicting evidence of the Subject Offenses;

    g.  Any evidence related to either the ownership, purchase, or possession of items used
        in the Subject Offenses;

    h.  Records of Internet activity, including browser history, search terms that the user
        entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned the **Device A** at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store

data) and any photographic form.

    This warrant authorizes a review of electronic storage media and electronically stored

information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant.  The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USPIS may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.